THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| COLSON MADRUGA,<br><br>                 Plaintiff,<br><br>v.<br><br>UTAH HIGH SCHOOL ACTIVITIES ASSOCIATION INC.; BOARD OF EDUCATION OF WASHINGTON COUNTY SCHOOL DISTRICT; MIKE BAIR; RICHARD HOLMES; CRAIG HAMMER; DOE I–X INDIVIDUALS; and ROE XI–XX ENTITIES,<br><br>                 Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 4:21-cv-00089-DN<br><br>District Judge David Nuffer |

On August 24, 2021, Plaintiff Colson Madruga ("Colson") filed his Complaint[1] alleging Defendants Utah High School Activities Association Inc. ("UHSAA"), the Board of Education of Washington County School District (the "School Board"), Mike Bair, Richard Holmes, and Craig Hammer violated his rights under the U.S. Constitution by engaging in discriminatory machinations to keep Colson from playing UHSAA-sanctioned sports at Dixie High School. About one month later, on September 27, 2021, Colson filed a motion for a temporary restraining order and preliminary injunction ("Motion"),[2] asking the court to enjoin UHSAA from barring Colson from participation in UHSAA-sanctioned sports for the 2021-2022 school year.

---

[1] Complaint & Jury Demand ("Complaint"), docket no. 2, filed Aug. 24, 2021.

[2] Ex Parte Motion for Temporary Restraining Order; Motion for Preliminary Injunction and Declaratory Relief ("Motion"), docket no. 15, filed Sep. 27, 2021.

No temporary restraining order was issued[3] because UHSAA and the School Board[4] received notice of the Motion, and the parties briefed the Motion on an expedited briefing schedule.[5] UHSAA filed an opposition to the Motion ("Opposition"),[6] the School Board filed a response to the Motion ("Response"),[7] and Colson filed a reply ("Reply").[8] A hearing was held on October 7, 2021 ("Hearing") to address Colson's Motion.

Based on the current record, Colson's Motion is DENIED.

Table of Contents

BACKGROUND ............................................................................................................................. 3
REQUESTED RELIEF.................................................................................................................... 6
PRELIMINARY INJUNCTION STANDARD............................................................................... 7
    1.      SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS .................... 9
    2.      IRREPARABLE INJURY ........................................................................................ 12
    3.      BALANCE OF HARMS .......................................................................................... 14
    4.      PUBLIC INTEREST ................................................................................................ 15
CONCLUSION.............................................................................................................................. 16
ORDER.......................................................................................................................................... 17

---

[3] Fed. R. Civ. P. 65(b) (requiring a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" for a temporary restraining order to issue).

[4] The Motion seeks to enjoin only UHSAA. The School Board filed a response because "the Motion utilizes factual allegations against District employees as the basis for relief and implicates the District's action as part of Plaintiff's claim of unconstitutionality." Response to Plaintiff's Ex Parte Motion for Temporary Restraining Order; Preliminary Injunction and Declaratory Relief ("Response") at 2, docket no. 26, filed Sep. 29, 2021.

[5] Docket no. 17, entered Sep. 27, 2021.

[6] Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief ("Opposition"), docket no. 23, filed Sep. 29, 2021.

[7] Response.

[8] Reply to Opposition to Ex Parte Motion for Temporary Restraining Order; Motion for Preliminary Injunction and Declaratory Relief ("Reply"), docket no. 30, filed Oct. 4, 2021.

## BACKGROUND[9]

1. Colson attended Lake Mead Christian Academy ("Lake Mead Academy") in Henderson, Clark County, Nevada for his freshman and sophomore years of high school, in 2017–2018 and 2018–2019, respectively.[10]

2. Colson missed his entire junior year of high school (2019–2020) due to a "progressively worsening health condition requiring hospitalization, two surgeries, months of convalescence and physical therapy three times a week for months afterward."[11]

3. When Colson's recovery was nearly complete, his family moved from Nevada to Washington County, Utah.[12]

4. Colson was enrolled at Dixie High School ("Dixie") as a junior in August 2020 for the 2020–2021 school year.[13]

5. When the administration at Dixie realized Colson had missed the entire 2019–2020 school year, they encouraged him to complete his junior and senior years during 2020–2021 so he could graduate with his age-appropriate class.[14]

6. Colson did not want to complete both his junior and senior years during 2020–2021 because he said that proposal would be "unduly burdensome."[15]

---

[9] The following factual record is preliminary, based on information as of the date of this Memorandum Decision and Order and is subject to revision based on evidence presented in any later proceedings, including trial. The record is drawn largely from the Complaint, the parties' briefs and supporting exhibits.

[10] Complaint ¶ 13 at 3.

[11] Complaint ¶¶ 14–15 at 3–4.

[12] Complaint ¶ 16 at 4.

[13] Complaint ¶¶ 17–19 at 4.

[14] Complaint ¶ 29 at 5; Motion ¶ 52 at 9–10.

[15] Complaint ¶ 30 at 5.

7.      On December 18, 2020, Dixie told Colson he could finish his 2020–2021 school year as a senior and would be allowed to continue his attendance in 2021–2022 as a retained senior.[16]

8.      Colson was told to schedule a hearing with UHSAA to determine his eligibility to play sports for the 2021–2022 school year, because eligibility for academic attendance and UHSAA athletics participation are separate determinations.[17]

9.      Colson was allowed to play UHSAA-sanctioned sports for the 2020–2021 school year.[18]

10.     The UHSAA handbook contains a "Years of Eligibility Rule" which says:

> At the time a student first enters the ninth grade of a high school or an equivalent level of education in any other system, that student shall have *four **consecutive** years of eligibility* for Association activities.[19]

---

[16] Complaint ¶ 73 at 10.

[17] Complaint ¶¶ 38, 87–88 at 6, 11–12.

[18] Motion ¶ 14 at 6. Colson asserts that he was originally not allowed to play in UHSAA-sanctioned sports for the 2020–2021 school year. *See* Complaint ¶¶ 43–44 at 6–7 and ¶¶ 76–80 at 10–11; *cf.* Motion, Exhibit 1, Affidavit of Ron Madruga in Support of Ex Parte Motion for Temporary Restraining Order ¶ 57 at 7, docket no. 15, filed Sep. 27, 2021 ("Colson was deprived of an opportunity to play *a complete season* during the 2020–2021 academic year.") (emphasis added). He mentions an investigation that UHSAA was conducting regarding his eligibility (Complaint ¶ 60 at 8), but it was only at the Hearing that UHSAA explained that the investigation involved UHSAA's transfer rule, which requires students who transfer to a new school to fill out an application detailing the reasons for the move so UHSAA may determine whether the transfer student is eligible to participate in UHSAA-sanctioned sports. Colson had not completed the transfer application, which appears to be the main reason he was initially not allowed to play in UHSAA-sanctioned games in 2020–2021. Colson disagrees and asserts that he was initially not allowed to play in 2020–2021 because UHSAA and the School District were discriminating against him as a non-local student. Complaint ¶¶ 81–86 at 11. Because the Motion focuses on Colson's ineligibility to play UHSAA-sanctioned sports in the 2021–2022 school year, which eligibility determination was based on the Years of Eligibility Rule, for the purposes of this Motion, what exactly occurred in the early 2020–2021 sports season need not be addressed.

[19] Opposition, Exhibit 1, UHSAA Handbook ("UHSAA Handbook") at 29, docket no. 23-1, filed Sep. 29, 2021 (emphasis added).

11. UHSAA interprets the Years of Eligibility Rule to mean that in the year a student enters the ninth grade, the clock begins ticking, and the student has exactly four continuous (meaning, no break in between) academic years to participate in UHSAA activities.[20]

12. UHSAA does not grant exceptions to the Years of Eligibility Rule for a number of reasons, including: (1) discouraging students to delay completion of high school education to compete longer in high school athletics; (2) keeping interscholastic activities competitive and safe by allowing students of relative equal maturity to compete; (3) preventing injury to students who are less physically and emotionally mature than others; (4) avoiding unfair competition and unfair displacement of other student athletes; and (5) graduating students on time so they do not become an undue financial burden on the taxpayers of Utah.[21]

13. The UHSAA Handbook also contains the "Sport Season Rule," which says:

> No student shall participate in Association activities in more than four seasons in any one activity after entering the ninth grade.
> A student shall have no more than one season of eligibility per sport per year.
> A school may sponsor an activity only once in any school year.[22]

14. On March 24, 2021, UHSAA held a hearing to determine Colson's eligibility to participate in high school sports for the 2021–2022 season ("March Hearing").[23]

15. Colson and his parents attended the March Hearing, and both Mr. and Mrs. Madruga were allowed to speak and present evidence.[24]

---

[20] Opposition at 1, ¶¶ 2, 6 at 3–4.

[21] UHSAA Handbook at 28.

[22] UHSAA Handbook at 29.

[23] Opposition, Exhibit 4, UHSAA Hearing Agenda March 24, 2021 ("March Hearing Agenda") at 1, docket no. 23-4, filed Sep. 29, 2021.

[24] Opposition, Exhibit 3, March Hearing Transcript, docket no. 23-3, filed Sep. 29, 2021.

16. At the conclusion of the March Hearing, UHSAA ruled that Colson was ineligible to play during the 2021–2022 season because UHSAA considered Colson's freshman year in 2017–2018 at Lake Mead Academy as ninth grade, beginning the four-year clock, with his fourth and final year of eligibility in 2020–2021.[25]

17. Colson appealed the March Ruling, and on April 8, 2021, an appeal hearing was held ("Appeal Hearing").[26]

18. After the appeals panel took evidence and reviewed the documents provided by Mr. Madruga, the appeals panel affirmed the March Ruling, finding again that Colson had entered ninth grade in 2017–2018 and that his four consecutive years of eligibility expired at the end of the 2020–2021 school year.[27]

## REQUESTED RELIEF

Colson, through his Motion, seeks to enjoin UHSAA from barring him from participation in: (1) UHSAA-sanctioned preseason tournaments that began on October 1, 2021; and (2) official in season tryouts on November 8, 2021.[28] Colson asserts that he is eligible to play UHSAA-sanctioned sports this year because UHSAA's ineligibility determination was an arbitrary abuse of power[29] that violated (and continues to violate) his Fourteenth Amendment equal protection right.[30]

---

[25] Opposition ¶ 6 at 3–4.

[26] Complaint ¶ 107 at 14; Opposition, Exhibit 7, UHSAA Hearing Agenda April 8, 2021 ("Appeal Hearing Agenda") at 1, docket no. 23-7, filed Sep. 29, 2021; *see also* Opposition, Exhibit 6, Appeal Hearing Transcript, docket no. 23-6, filed Sep. 29, 2021.

[27] Opposition ¶¶ 9–10 at 4–5.

[28] Motion at 3.

[29] Motion ¶ 108 at 15.

[30] Motion at 17–24. While the Complaint alleges other causes of action, they were not relied on as a basis for preliminary injunctive relief.

## PRELIMINARY INJUNCTION STANDARD

To obtain a preliminary injunction, the movant must show that "(1) [the movant] will suffer irreparable injury unless the injunction issues; (2) the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of the moving party's success] on the merits."[31] Where the moving party can show that the first, second, and third factors "tip strongly in [its] favor," the Tenth Circuit holds that the moving party may satisfy the fourth factor "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."[32] This relaxed standard is only applicable if the movant cannot satisfy the traditional standard.[33]

The Tenth Circuit has also "identified the following three types of specifically disfavored preliminary injunctions and concluded that a movant must 'satisfy an even heavier burden of showing that the four [preliminary injunction] factors . . . weigh heavily and compellingly in movant's favor before such an injunction may be issued': (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."[34]

"[A]ny preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a

---

[31] *Heideman v. South Salt Lake City*, 348 F3d 1182, 1188 (10th Cir. 2003); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1128 (10th Cir. 2013).

[32] *Hobby Lobby*, 723 F.3d at 1128 (quoting *Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006)).

[33] *Id.*

[34] *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

remedy that is extraordinary even in the normal course," and "movants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard."[35] Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms."[36]

"[T]he status quo is 'the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing.'"[37]

A "mandatory injunction" is an injunction that mandates action rather than prohibiting it.[38] Determining whether an injunction is mandatory as opposed to prohibitory "can be vexing."[39] The Tenth Circuit has said an injunction is mandatory "if the requested relief affirmatively require[s] the nonmovant to act in a particular way, and as a result … place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction."[40]

UHSAA argues that Colson seeks a disfavored injunction,[41] so Colson "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard."[42] Colson is currently ineligible to participate in UHSAA-sanctioned sports (the status quo), and his injunction seeks to force UHSAA to grant him eligibility. Colson's requested

---

[35] *Id.* at 975–76.

[36] *Id.*

[37] *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001)

[38] *See Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).

[39] *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005).

[40] *Id.*

[41] Opposition at 5–7.

[42] *O Centro*, 389 F.3d at 976.

injunction also would require affirmative action by UHSAA (reversing its ineligibility determination) and would create a possible necessity of ongoing supervision by this court to ensure that UHSAA allows Colson to play in every UHSAA-sanctioned event throughout the 2021–2022 school year. Colson's injunction is clearly a disfavored injunction because it either alters the status quo or qualifies as a mandatory injunction.[43] However, because Colson's Motion fails even the traditional standard for a preliminary injunction, the more demanding standard for disfavored injunctions need not be applied.

### 1.  SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Colson must show that there is a substantial likelihood of success on the merits of his equal protection claim.[44] For any court to grant a preliminary injunction, "[t]here must exist a probable right and a probable danger."[45]

Colson argues that he has a constitutional right to play high school sports for four seasons and that his right is being denied for discriminatory reasons.[46] Based on these assertions, Colson argues that he is highly likely to prevail on the merits of his equal protection claim,[47] and so he should be granted injunctive relief.[48]

---

[43] Whether the requested injunction also qualifies as the third type of disfavored injunction need not be addressed, because it qualifies under either the first or second type, and also because Colson ultimately fails the traditional test for a preliminary injunction.

[44] *See Heideman*, 348 F3d at 1188; *Hobby Lobby*, 723 F.3d at 1128. Colson's Motion only relies on his equal protection claim, and does not address his privileges & immunities or due process claims raised in his Complaint.

[45] *Crowther v. Seaborg*, 415 F.2d 437, 439 (10th Cir. 1969)

[46] Motion at 23–24; *see also* Reply at 8.

[47] Colson does not provide any argument supporting his due process claim under the Fifth Amendment or his Privileges and Immunities Clause claim. At the Hearing, there was discussion of the troublesome issues with these claims.

[48] Motion at 24.

For the purposes of his Motion, Colson's argument fails. "Participation in interscholastic athletics is not a constitutionally protected civil right."[49] The Tenth Circuit has "consistently found that, unless clearly defined constitutional principles are at issue, the suits of student-athletes displeased with high school athletic associations or NCAA rules do not present substantial federal questions."[50]

Because Colson has no constitutional right to play high school sports, Colson's Complaint might not even present a substantial federal question sufficient for jurisdiction.

Even if Colson's equal protection claim proves viable, rational basis analysis would apply. This is because he has not raised a claim implicating a fundamental right, such as race or national origin, nor has he raised a quasi-suspect characteristic, such as gender.[51] Instead, Colson belongs to the class of high school students who want to play sports for four years, but for whom more than four consecutive years have passed since their entry into high school in the ninth grade.[52]

Because such a class does not implicate either a fundamental right or a protected class, the rational basis test applies.[53] The inquiry for the rational basis test is "whether the

---

[49] *Albach v. Odle*, 531 F.2d 983, 984–85 (10th Cir. 1976).

[50] *Jones v. Wichita State Univ.*, 698 F.2d 1082, 1085 (10th Cir. 1983); *see also Oklahoma High Sch. Athletic Ass'n v. Bray,* 321 F.2d 269, 273 (10th Cir. 1963).

[51] *See Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109 (10th Cir. 2008).

[52] Colson also argues that he should be treated as a "class of one" for the equal protection analysis. Motion at 23–24. The class of one analysis requires a plaintiff to "first establish that others, 'similarly situated in every material respect' were treated differently," and that the difference in treatment was "without rational basis . . . and 'wholly unrelated to any legitimate state activity.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011). The allegation is based principally on conversations with high school personnel, particularly Craig Hammer, about Colson's "outsider" status. *See* Complaint ¶¶ 89–105 at 12–13. Because the class of one analysis is very similar to the rational basis analysis, and Colson fails to show any likelihood of success on his equal protection claim under either standard, review is based on the rational basis analysis for simplicity.

[53] *See Price-Cornelison*, 524 F.3d at 1110.

government's classification bears a rational relation to some legitimate end."[54] And, equal protection "is essentially a direction that all persons similarly situated should be treated alike."[55]

In Colson's case, UHSAA's application of the Years of Eligibility Rule meets the rational basis test. UHSAA has stated legitimate reasons for not providing exceptions to the Rule, including but not limited to fairness in competition and avoiding injuries because of the presence of more mature players in competition.

Colson argues in his Reply that the Years of Eligibility Rule makes the Sport Season Rule superfluous unless the Years of Eligibility Rule sets a *minimum* number of years of eligibility, and not a maximum.[56] But for this argument to make sense, one must ignore the qualifying word, "consecutive," because the meaning of the Years of Eligibility Rule is clear: the clock begins ticking in ninth grade and ends upon completion of the fourth year, with no stopping the clock for any gap years, no matter the reason for any absences.

Colson argues that other states[57] across the country have similar years-of-eligibility rules, but that those states allow students like Colson to play sports beyond four consecutive years.[58] Colson provides the Bylaws of the Kentucky High School Athletic Association ("KHSAA") to

---

[54] *Id.* (internal quotation marks and citation omitted).

[55] *Id.* at 1109.

[56] Reply at 4–7. Interpreting the Years of Eligibility Rule as setting a maximum of four consecutive years does not render the Sport Season Rule superfluous. It is unclear why Colson believes this to be the case, and counsel was unable to convincingly articulate his argument during the Hearing. The Sport Season Rule is not superfluous and may address the following hypothetical situation: If a student begins the school year at School A, and plays UHSAA soccer at School A in the fall, and then the student transfers to School B in the spring, and School B happens to have its UHSAA soccer season in the spring (perhaps it is in a different division), then the student cannot play in the UHSAA soccer season at School B because the student only has one season of eligibility per sport per year under the Sport Season Rule. The Years of Eligibility Rule does not address this situation.

[57] Colson's Counsel states in his Reply that he has reviewed high school athletic association bylaws from other states and says "all are unanimous in that the 'four consecutive years' sets a minimum years of eligibility, not a maximum years of eligibility," but he did not provide any bylaws in addition to the KHSAA Bylaws, and did not present any other bylaws at the Hearing to support his argument. Reply ¶ 5 at 3.

[58] Reply at 4–7.

support this argument.[59] Colson's argument is not convincing. The KHSAA Rule appears very similar to the Years of Eligibility Rule, and Colson has provided no additional argument or evidence to support his assertion that the KHSAA would allow a student in Colson's situation to have a fifth year of eligibility. True, the KHSAA rule has a discretionary exception which could apply to a student like Colson, but the absence of that provision in Utah is not remediable by judicial action.

Because Colson has no constitutional right to play high school sports, and he has failed to show any prohibited differential treatment under the rational basis test, he fails to show any likelihood of success on the merits of his equal protection claim.

### 2. IRREPARABLE INJURY

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain."[60] Significantly, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."[61] As the Tenth Circuit recognized in *Hobby Lobby*, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[62]

"[C]ourts have consistently noted that '[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving

---

[59] Reply, Exhibit 1, Kentucky HSAA Bylaws, docket no. 30, filed Oct. 4, 2021.

[60] *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) (quoting *Dominion*, 269 F.3d at 1156).

[61] *Id.* at 1131 (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001)).

[62] *Hobby Lobby*, 723 F.3d at 1145.

party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'"[63]

Colson argues that if he is not allowed to play UHSAA-sanctioned sports during his final year of high school, his chances of obtaining an athletic scholarship in college will be harmed, resulting in irreparable injury to him.[64] Colson also argues that disallowing him to play UHSAA-sanctioned sports during his final year will "permanently and irreparably deprive him his [sic] equal educational right to play four years of consecutive high school sports."[65]

While Colson's injury of being prohibited from playing UHSAA-sanctioned sports during his final year of high school may be considered a real injury to him, it is not a legally cognizable injury because there is no constitutional right to participate in high school sports.[66]

Further, "it is well established that ineligibility for participation in interscholastic athletic competitions alone does not constitute irreparable harm."[67]

Plaintiffs also must "complain[] of injuries promptly, before defendants come to rely on the status quo."[68] The School Board argues that Colson unjustifiably delayed seeking preliminary relief.[69] Colson filed a similar motion for injunctive relief in state court in May 2021, which was denied in June 2021.[70] He filed his Complaint in this court on August 24, 2021, and waited for over a month to file his Motion. Colson provides no reason for the delay. A

---

[63] *Dominion*, 356 F.3d at 1260–61 (citations omitted).

[64] Motion at 19.

[65] Motion at 19–20.

[66] *See infra* at 9–12.

[67] *Sharon City Sch. Dist. v. Pennsylvania Interscholastic Athletic Ass'n, Inc.*, No. CIV.A. 9-213, 2009 WL 427373, at *2 (W.D. Pa. Feb. 20, 2009)

[68] *O Centro*, 389 F.3d at 1017 (McConnell, J., concurring).

[69] Response at 11–12.

[70] *See* Docket for *Madruga, Ron, et al. vs. UHSAA, et al.*, case no. 210500370, 5th Dist. Ct. Ut. 2021.

preliminary injunction is an equitable remedy, and "[e]quity aids the vigilant, not those who slumber on their rights."[71] Colson's "[l]ack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm[.]"[72]

Even without Colson's unexplained delay in filing his Motion, which seriously undermines his argument, Colson cannot show he will suffer irreparable injury because he has no constitutional right to play high school sports.

### 3. BALANCE OF HARMS

The [moving party] must show that its "threatened injury outweighs any injury to [Defendants] caused by granting the injunction."[73]

Colson asserts that the defendants will not be damaged "in any foreseeable way" by Colson "playing a fourth year of interscholastic sports."[74] But UHSAA asserts that the injunction would significantly harm and undermine UHSAA's legitimacy and create precedent for future appeals by students who received adverse eligibility decisions.[75] UHSAA's mission is to create and enforce a uniform set of rules that stress participation, fairness, and competitive balance, and creating an exception for Colson, whose situation is "far from unique," would harm its mission.[76]

UHSAA's harm clearly outweighs Colson's harm. Colson has failed to establish he will suffer irreparable injury as explained above. Colson's loss of his junior year and his resulting ineligibility to play sports in 2021–2022 is unfortunate and extremely disappointing to him, his

---

[71] *Standard Oil Co. of N. M. v. Standard Oil Co. of Cal.,* 56 F.2d 973, 975 (10th Cir. 1932) (citations omitted).

[72] *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985).

[73] *Awad*, 670 F.3d at 1131.

[74] Motion at 20.

[75] Opposition at 11.

[76] Opposition at 11.

parents, and coach, but granting him an exception to the rule by granting his motion for a preliminary injunction would undermine UHSAA's mission for uniformity and fairness in application of its rules.

### 4. PUBLIC INTEREST

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights."[77] "While the public has an interest in the will of the voters being carried out . . . the public has a more profound and long-term interest in upholding an individual's constitutional rights."[78]

Colson argues that enjoining UHSAA would not be adverse to the public interest because: (1) Colson is a qualified school aged child;[79] and (2) Colson is a prior private school student, so he has not been a drain on any state's secondary education budget.[80]

UHSAA argues that an injunction would be adverse to the public interest because: (1) allowing students additional time of eligibility would create larger age and maturity disparities among student athletes, which would increase the risk of injury and unfair competition; and (2) the uniformity of the rules are intended to enhance the safety and fairness of competitions and allowing UHSAA to apply those rules without costly judicial interferences is in the public interest.[81]

---

[77] *Hobby Lobby*, 723 F.3d at 1147.

[78] *Awad*, 670 F.3d at 1132.

[79] Colson confuses the academic and athletic rules. For his academic eligibility to continue high school for the 2021–2022 school year, he must be of "qualifying school age," and he clearly satisfies this rule. *See* Utah Admin. Code R. R277-419-2(25); *see also* Motion, Exhibit 1, Affidavit of Ron Madruga in Support of Ex Parte Motion for Temporary Restraining Order ¶ 54 at 7, docket no. 15, filed Sep. 27, 2021. For athletic eligibility with UHSAA, the applicable rule is the Age Rule. UHSAA Handbook at 29. Colson meets the Age Rule, but he must meet *all applicable* UHSAA rules to be eligible to play, and he was denied eligibility based on the Years of Eligibility Rule.

[80] Motion at 22.

[81] Opposition at 12.

The School Board argues that an injunction would allow a noneligible high school athlete to participate in high school athletics, which would be unfair for similarly situated students.[82] The School Board also argues that the rule is in the public interest because it prevents high school athletes from disrupting their educational process and creates an unequal playing field for student athletes who are unable to afford or do not wish to take a year break.[83]

The public interest clearly favors UHSAA. Colson must meet all applicable UHSAA eligibility rules, and the fact that he is a "qualifying school age" student or that he was a private school student in prior years does not change the fact that he has exhausted his four consecutive years of eligibility. Granting Colson's injunction would allow a likely ineligible high school athlete to participate in high school athletics. It would create precedent that a student wanting more than four consecutive years of high school athletics eligibility can simply file a lawsuit to force UHSAA to grant that student an additional year. The Years of Eligibility Rule would effectively only apply to students who are unable to file a lawsuit. This is exactly one of the kinds of unfairness the Rule is intended to prevent.

## CONCLUSION

Colson's Motion must be denied because: (1) he has failed to show any likelihood of success of his equal protection claim on the merits of his case; (2) he has failed to show he will suffer an irreparable injury if his Motion is denied; (3) the balance of harms weighs in favor of UHSAA, not Colson; and (4) it is in the public interest that Colson's Motion be denied so that the UHSAA rules are consistently and fairly enforced, without any exceptions.

---

[82] Response at 12–13.

[83] Response at 13.

Because Colson fails to meet any of the four prongs under the traditional preliminary injunction standard, Colson's Motion must be denied.

## ORDER

IT IS HEREBY ORDERED that Colson's Motion[84] is DENIED.

Signed October 12, 2021.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[84] Ex Parte Motion for Temporary Restraining Order; Motion for Preliminary Injunction and Declaratory Relief, docket no. 15, filed Sep. 27, 2021.